IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FARIZ NAGHIYEV,

       Petitioner,

v.                                No. 2:25-cv-1313 MIS/DLM

PAM BONDI, et al.,

       Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Fariz Naghiyev's Amended Petition for a Writ of Habeas Corpus, filed under 28 U.S.C. § 2241. (Doc. 5.) Petitioner challenges his continued detention following a final order of removal, asserting that his confinement under 8 U.S.C. § 1231(a) has become unlawful because removal is not reasonably foreseeable. He also requests additional relief, including issuance of a Social Security number and work authorization. Having reviewed the record and the applicable law, the undersigned recommends that the Amended Petition be **GRANTED IN PART** to the extent Petitioner seeks release under 8 U.S.C. § 1231(a) and **DENIED IN PART** to the extent he seeks relief outside the scope of habeas review.[1]

### I.      Factual and Procedural Background

Petitioner is a 32-year-old native and citizen of Azerbaijan. (*See* Docs. 5 at 9–14; 8 at 2; 8-1 at 1; 8-2 at 1–2.) On February 15, 2025, he attempted to enter the United States at the Hidalgo Port of Entry in Hidalgo, Texas. (*See* Doc. 8-1 at 1; Doc. 8-2 at 1–2.) Upon arrival at the border, Petitioner presented himself to Customs and Border Protection (CBP) officers and requested

---

[1] On January 6, 2026, United States District Judge Margaret I. Strickland entered an Order of Reference referring this case to the undersigned "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 3.)

asylum. (*See* Doc. 8-2 at 2–3.) CBP determined that Petitioner was inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) and processed him for expedited removal with a credible-fear referral.[2] (*See id.*) Petitioner was then turned over to custody of Immigration and Customs Enforcement (ICE) for detention. (*Id.* at 3.) Petitioner has no criminal history. (*Id.* at 1.)

Petitioner is currently detained at the Otero County Processing Center (OCPC) in Chaparral, New Mexico. (Docs. 5 at 1; 8-1 at 1.) On July 10, 2025, the Department of Homeland Security (DHS) served Petitioner with a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled. (*See* Doc. 8-1 at 1.)

On August 19, 2025, an Immigration Judge (IJ) found Petitioner removable as charged under Section 212(a)(6)(A)(i) of the INA, denied asylum and statutory withholding, and granted withholding of removal to Azerbaijan under the Convention Against Torture (CAT). (*See* Docs. 8 at 2; 8-3 at 1.) The IJ's written order reflects that Petitioner waived appeal on the record that same day. (*See* Doc. 8-3 at 4.) DHS reserved appeal but did not file one. (*Id.*; *see also* Doc. 8 at 2.)

Petitioner has remained continuously detained since February 15, 2025. (*See* Docs. 5 at 1; 8 at 2.) He asserts that despite the IJ's grant of CAT withholding, DHS has not identified any third country willing to accept him, has not provided a timeline for removal, and has not obtained travel documents. (*See* Docs. 5 at 6; 9 at 1–2.) Respondents state that "DHS is pursuing removal to a third country." (Doc. 8 at 2.)

---

[2] DHS's Form I-831 reflects that CBP found Petitioner inadmissible under Section 212(a)(7)(A)(i)(I) of the INA and processed him for expedited removal under 8 U.S.C. § 1225(b)(1). (*See* Doc. 8-2 at 2.) Petitioner was later charged under Section 212(a)(6)(A)(i) of the INA. (*See* Docs. 8-1 at 1; 8-3 at 1.) The undersigned cites each statutory provision in the context in which it was applied.

On January 7, 2026, Petitioner filed his Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his continued detention pursuant to 8 U.S.C. § 1231 (*See* Doc. 5 at 6.) He seeks immediate release from ICE custody with rights to legally work in the United States, including a Social Security Number and a work permit. (*Id.* at 7.) Respondents filed their response in opposition on January 27, 2026. (Doc. 8.) Petitioner filed his Reply on February 10, 2026. (Doc. 9.) The matter is now fully briefed and ready for disposition.

## II.      Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

## III.     Discussion

Petitioner challenges the legality of his continued post-order detention under 8 U.S.C. § 1231(a), asserting that DHS has detained him for nearly a year without demonstrating any

significant likelihood of removal in the reasonably foreseeable future. (*See* Docs. 5 at 1, 6; 9 at 1–2.) Petitioner also notes that DHS has not identified any country willing to accept him, has not obtained travel documents, and has not provided any concrete timeline for effectuating removal. (*See* Docs. 5 at 6; 9 at 1–2.)

Respondents counter that Petitioner is subject to mandatory detention under § 1231(a)(2) because his removal order became final on September 19, 2025, and that his *Zadvydas* claim is premature because the six-month presumptively reasonable period has not yet elapsed. (*See* Doc. 8 at 1–2, 5–6.) Respondents also assert, without evidentiary support, that DHS is "pursuing removal to a third country" and that removal is "imminent." (*Id.* at 2, 6.)

For the reasons explained below, the undersigned concludes that Petitioner's removal order became administratively final on August 19, 2025, when he waived appeal, and his prolonged detention raises a genuine claim under *Zadvydas*. The record also demonstrates good reason to believe removal is not reasonably foreseeable. The undersigned therefore addresses (1) the date on which Petitioner's removal order became final, and (2) whether Petitioner has met his burden under *Zadvydas* to show that continued detention is no longer reasonably related to its immigration purpose.

### A.    Petitioner's removal order became final on August 19, 2025, when he waived appeal.

The undersigned concludes that Petitioner's removal order became administratively final on August 19, 2025, the date on which he expressly waived appeal, and the government's reliance on later dates is inconsistent with the governing regulation and the record. Under the INA's regulation, an IJ's removal order becomes final when any of the following events occur:

(a) Upon dismissal of an appeal by the Board of Immigration Appeals;

(b) *Upon waiver of appeal by the respondent*;

(c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;

(d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;

(e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or

(f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. If the respondent has filed a timely appeal with the Board, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of the voluntary departure period granted or reinstated by the Board or the Attorney General.

8 C.F.R. § 1241.1 (emphasis added).[3]

The record reflects that Petitioner affirmatively waived appeal on August 19, 2025, the same day the IJ issued the decision in the removal proceedings. (*See* Doc. 8-3 at 4.) Under § 1241.1(b), that waiver made the removal order administratively final as of that date, without the need to wait for the 30-day appeal period to run. Courts routinely recognize that waiver of appeal renders an IJ's removal order administratively final on the date of the waiver. *See, e.g.*, *Jumadar v. Castro*, No. 2:26-cv-0159 KG/JMR, 2026 WL 392424, at *1 (D.N.M. Feb. 11, 2026) (removal order "administratively final" where petitioner "waived his right to appeal"); *Hmung v. Bondi*, No. 25-cv-1303-J, 2025 WL 3657221, at *3 (W.D. Okla. Dec. 9, 2025) (waiver "made the decision administratively final"); *Safari v. Warden*, No. 3:26-cv-41 CCB/SJF, 2026 WL 507367, at *2

---

[3] In § 1241.1, the term "respondent" refers to the noncitizen who was the respondent in the immigration-court proceedings. This usage is distinct from the "Respondents" named in the caption of this federal habeas action, who are the government officials responsible for Petitioner's detention. (*See* Doc. 8-3 at 1 (identifying Petitioner as the "Respondent" in the removal proceedings).)

(N.D. Ind. Feb. 23, 2026) (order "became final . . . when he waived his right to an appeal"); *Zhe v. Green*, No. 17-cv-7182 KM, 2017 WL 4407934, at *2 (D.N.J. Oct. 4, 2017) (same).

The government nonetheless asserts that the order did not become final until September 19, 2025, the date listed as the appeal deadline. (*See* Doc. 8 at 2 (citing Doc. 8-3 at 4).) But subsection (c) governs only when none of the other bases for finality apply, including waiver of appeal by the noncitizen. Notably, Respondents themselves acknowledge elsewhere in their brief that a removal order "may also become final when an alien waives appeal[,]" citing the same regulation. (Doc. 8 at 3 (quoting 8 C.F.R. § 1241.1).) Here, Petitioner, the "respondent" in the removal proceedings, expressly waived appeal on the record. (*See* Doc. 8-3 at 1, 4.) The regulation is clear: finality attaches upon waiver by the noncitizen, not upon the expiration of the appeal period. *See* 8 C.F.R. § 1241.1(b).

Nor does anything in the record support the government's assertion that the Board of Immigration Appeals' (BIA) January 8, 2026 "return without action" somehow confirmed or triggered finality. (*See* Doc. 8 at 5–6.) Respondents cite no exhibit reflecting such an order, and the record contains no BIA filing dated January 8, 2026—or any BIA filing at all. The only document addressing appeal rights is the IJ's August 19, 2025 order, which expressly states that Petitioner, in this case, waived appeal. (*See* Doc. 8-3 at 4.) Respondents' brief also suggests that Petitioner "withdrew his appeal," but that characterization is inconsistent with the IJ's order and unsupported by any citation to the record. (Doc. 8 at 6.) Because the record reflects a waiver—not a withdrawal—and because Respondents identify no BIA action affecting when the order became final, the undersigned finds no basis to depart from § 1241.1(b)'s rule that the order became final on August 19, 2025. Once Petitioner waived appeal on August 19, 2025, the order was final for purposes of 8 U.S.C. § 1231(a).

Accordingly, the undersigned finds that Petitioner's removal order became final on August 19, 2025, and the removal period—and any analysis under *Zadvydas v. Davis*, 533 U.S. 678 (2001)—must be calculated from that date.

**B.    Petitioner's continued detention is unlawful under *Zadvydas*.**

Petitioner's continued detention is unlawful because he has been held beyond the six-month presumptively reasonable period and the record establishes that his removal is not significantly likely in the reasonably foreseeable future. Respondents have not carried their burden to show otherwise.

Post-removal detention is generally governed by 8 U.S.C. § 1231(a)(2), which mandates detention "[a]fter entry of a final removal order." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). Pursuant to the INA, the Government must remove a noncitizen from the United States within a 90-day removal period. 8 U.S.C. § 1231(a)(1)(A). During the 90-day removal period, the noncitizen must be detained. *Id.* § 1231(a)(2). The removal period begins when the removal order "becomes administratively final." *Id.* § 1231(a)(1)(B)(i). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

The Government may detain a noncitizen beyond the initial 90-day removal period only for the time "reasonably necessary" to effectuate removal. *See Zadvydas*, 533 U.S. at 699; *see also* 8 U.S.C. § 1231(a)(6). Detention for six months is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once that period passes, a detainee need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to the Government to rebut that showing with evidence. *Id.* This framework

applies equally to inadmissible and arriving noncitizens. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005).

As explained above, Petitioner's removal order became administratively final on August 19, 2025, when he waived appeal. His detention is therefore governed by 8 U.S.C. § 1231(a). The six-month presumptively reasonable period under *Zadvydas* therefore expired on February 19, 2026. Petitioner has now been detained beyond the six-month presumptively reasonable period since his removal order became final—and for more than one year in total. Respondents do not dispute the length of detention. The question, then, is whether Petitioner has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and whether Respondents have rebutted that showing.

### 1.    Petitioner has shown good reason to believe removal is not reasonably foreseeable.

Petitioner asserts that DHS has not identified any country willing to accept him, has not obtained travel documents, and has not provided any timeline for effectuating removal. (*See* Docs. 5 at 6; 9 at 1–2.) Respondents do not dispute these assertions. They identify no accepting country, no pending travel-document request, and no communication with any foreign government. They provide no declaration from an ICE officer, no evidence of outreach to any consulate, and no documentation of repatriation efforts.

This absence of evidence constitutes "good reason to believe" that removal is not reasonably foreseeable. *See Zadvydas*, 533 U.S. at 701. Courts in this district have repeatedly held that prolonged detention, combined with failed or nonexistent removal efforts, satisfies the petitioner's initial burden. *See Lorenzo v. Bondi*, No. 2:25-cv-0923 KWR/GJF, 2026 WL 84521, at *5–6 (D.N.M. Jan. 12, 2026) (no reasonably foreseeable removal where DHS had contacted only one country and received no response); *Jimenez Chacon v. Lyons*, --- F. Supp. 3d ---, No.

2:25-cv-0977 DHU/KBM, 2025 WL 3496702, at *7 (D.N.M. Dec. 4, 2025) (no reasonably foreseeable removal where DHS had contacted multiple countries without success and could not identify any accepting country); *Salazar-Martinez v. Lyons*, No. 2:25-cv-0961 KG/KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (pending third-country requests without concrete progress insufficient).

Here, the record is even thinner: Respondents have not shown that they contacted *any* country.

### 2.     Respondents have not rebutted Petitioner's showing.

Once Petitioner made his initial showing, the burden shifts to Respondents to produce evidence demonstrating a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Respondents have not done so.

Their only assertion is that removal is "imminent." (Doc. 8 at 6.) They cite no exhibit, provide no declaration, and identify no factual basis for this claim. Courts in this district have emphasized that speculative assertions or minimal removal efforts do not establish a significant likelihood of removal in the reasonably foreseeable future. *See Izbitski v. Carnes*, No. 1:25-cv-0778 JB/JMR, 2026 WL 102974, at *7–8 (D.N.M. Jan. 14, 2026) (government's single request for travel documents and vague references to continued efforts insufficient where "nothing in the record suggests that removal is imminent" and no accepting country identified); *Lorenzo*, 2026 WL 84521, at *5 (government's claim that petitioner was "on the cusp" of removal unsupported where no accepting country identified and no evidence of progress).

Respondents also suggest that Petitioner "withdrew his appeal," but once again, that assertion is contradicted by the IJ's order and unsupported by any citation to the record. (*See* Docs. 8 at 6; 8-3 at 4.) Respondents appear to invoke this mischaracterization to imply that an appeal

existed and delayed the finality of the removal order, and that DHS could not pursue removal efforts until the appeal was supposedly withdrawn. But the record contains no evidence of any such appeal or any resulting impediment to removal efforts.

Because Respondents have not identified any accepting country, any pending travel-document request, or any concrete progress toward removal, they have not rebutted Petitioner's showing.

Under *Zadvydas*, detention is permissible only so long as it remains reasonably related to its immigration purpose—i.e., effectuating removal. *See* 533 U.S. at 699–701. After the six-month presumptively reasonable period, detention is lawful only if the Government can show that removal remains significantly likely in the reasonably foreseeable future. *Id.* at 701. And where, as here, the Government cannot identify any viable removal route, continued detention is no longer authorized. *See, e.g.*, *Jimenez Chacon*, 2025 WL 3496702, at *7 ("the remote prospect of removal[ ]to a hypothetical third country . . . does not make removal reasonably foreseeable"); *Salazar-Martinez*, 2025 WL 3204807, at *2 ("mere possibility of repatriation . . . without concrete progress, is insufficient to justify continued detention").

Because Petitioner has shown good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, and because Respondents have not rebutted that showing, his continued detention violates § 1231(a). The undersigned therefore recommends that Petitioner be released under appropriate conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

10

**C.      Petitioner's requests for a Social Security number and work authorization are outside the scope of habeas review.**

Petitioner also seeks an order directing the issuance of a Social Security number, work authorization, and related benefits. (*See* Doc. 5 at 7.) These requests fall outside the scope of relief available in a habeas corpus proceeding under 28 U.S.C. § 2241. The purpose of habeas corpus is to challenge the legality of custody and to secure release from unlawful detention; it does not provide a vehicle to obtain collateral immigration benefits or authorization to work in the United States. *See Palma-Salazar*, 677 F.3d at 1035 ("the traditional function of the writ is to secure release from illegal custody") (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)). The Supreme Court has likewise emphasized that habeas corpus cannot be used "to claim the right to . . . remain in a country or to obtain administrative review potentially leading to that result[,]" because "[t]he writ simply provide[s] a means of contesting the lawfulness of restraint and securing release." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020).

Because Petitioner's requests for a Social Security number, work authorization, and other benefits do not relate to the legality of his custody, they fall outside the scope of habeas relief. The undersigned therefore recommends that this portion of the Amended Petition be denied.

**IV.      Conclusion**

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. Petitioner's Amended Petition for Writ of Habeas Corpus should be **GRANTED IN PART** to the extent he seeks release from immigration custody. Petitioner should be released immediately under appropriate conditions of supervision

pursuant to 8 U.S.C. § 1231(a)(3), subject to any additional terms and conditions the Court may deem appropriate.

2. Petitioner's request for additional relief—namely, an order directing the issuance of a Social Security number, work authorization, or any other benefits—is outside the scope of habeas review and should be **DENIED**.

3. The Court should **ORDER** Respondents to file a status report within seven days of the Court's order confirming Petitioner's release and compliance with the Court's directives.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE